(No. 15123.—Decree affirmed.)
MINERVA C. CRAWFORD *et al.* Appellees, *vs.* ALLEN B.
HURST, Appellant.

*Opinion filed February 21, 1923—Rehearing denied April 6, 1923.*

1. WORDS AND PHRASES—*meaning of word "give."* The word "give" primarily means to transfer to another's possession or ownership without compensation, but it is often used as meaning to put into another's possession by any means or on any terms whatever.

2. TRUSTS—*testimony that wife "gave" her husband the purchase money will not defeat a resulting trust.* Testimony that a wife "gave" her husband money with which to purchase land and take the title in his own name will not necessarily defeat a resulting trust in her favor on the ground that such testimony implies a donation of the property, as it may as well refer to a transfer of possession, only.

3. SAME—*in establishing a resulting trust it is immaterial by whom the purchase was made.* If the fact exists that one person's money paid for land and the title was taken in another a trust is raised in favor of the person whose money was used to purchase the land, and it is immaterial whether the purchase was made by the one or the other, and it may have been made by either, with or without the knowledge of the other.

4. SAME—*a resulting trust is established where husband takes title to land purchased with wife's money.* Where a husband takes title to land bought with his wife's money there is no presumption of a gift or advancement to him as there is no legal obligation on the part of the wife to support him; and in such case it is not necessary, in order to establish a resulting trust in favor of the wife, to show an intention by the parties to create a trust at the time of the transaction.

5. SAME—*general rule as to when gift or advancement is presumed.* Where a party takes title to land purchased with another's money and there is a legal obligation resting on the person furnishing the consideration to support the person in whose name the conveyance is taken the law infers an intention to make a gift or advancement to the person named as grantee, and in order to establish a resulting trust there must be circumstances attending the transaction which negative the inference of a gift or advancement.

APPEAL from the Circuit Court of Brown county; the Hon. GUY R. WILLIAMS, Judge, presiding.

A. CLAY WILLIAMS, J. F. REGAN, and S. A. HUBBARD, for appellant.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This case was a bill filed in the circuit court of Brown county to establish a resulting trust in eighty acres of land in that county. The cause was in this court at the October term, 1921, on the appeal of the complainants from a decree dismissing the bill. The decree was reversed and the cause was remanded for a rehearing, with leave to introduce further evidence. (*Crawford* v. *Hurst,* 299 Ill. 503.) In the opinion then filed is a full and clear statement of the facts, which it is not necessary to repeat here.

When the cause was re-instated in the circuit court additional evidence was introduced, three additional witnesses being examined on each side. On the former appeal it was held that the evidence clearly established that at least $9400 of the $10,400 purchase money for the land was furnished by Stella Hurst, the wife of the appellant, Allen B. Hurst, in whose name the title was taken, and that there was no evidence of any understanding between them that the deed was to be made to him. On the last hearing Frank L. Hurst, a nephew of the appellant, testified that in the year 1910 he graduated from the high school; that he was in the appellant's house from Friday until Monday in the early part of that year, shortly after the holidays, when the appellant and his wife were starting on a trip to Mt. Sterling, saying that they were going so they could have a deed made out to the farm. When they returned in the evening he was talking with the appellant and his wife in the house, and Stella Hurst spoke about having a deed made out. She said that it was made to Allen, and she felt if anything happened to her he would be taken care of and if anything

happened to him she would have her rights, and she also spoke about the difficulty she and her sister had had. She said something about her and her sister not having anything to do with each other. On cross-examination he testified that she said they had had the land deeded to Allen, and if anything happened to her he would be all right and if anything happened to him she would have her rights, and that is the reason she had it made out in his name. He knew that Mrs. Hurst had a friendly feeling for Howell, her sister's son, because he remembered her having Howell with her when he was quite a youngster, in Cooperstown, and he heard she sent for her sister before her death. This was the only conversation which he had with her relative to her feeling for her sister or in regard to this transaction. The appellant's brother, James R. Hurst, the father of Frank L. Hurst, also testified that he had a conversation with Stella Hurst in which he said to her, "You bought a farm close to town." "No," she said, "Allen bought the farm." Hurst said, "I don't understand how he could buy the farm; I did not know he had enough money," and she answered, "I gave him the money to buy the farm." On cross-examination he testified that he heard the land was sold and thought it belonged to her, and this conversation was in his store soon afterward. He just asked her if she did buy the farm, and she said, "I gave him the money to buy it, or gave him a check, or something like that. I have told it just as I remember it,—that Allen bought the farm and she gave him the money." The testimony of the other witness examined for the appellant was unimportant. It was merely to the effect that the relations of the appellant and his wife were pleasant.

The additional evidence introduced by the appellees consisted of the testimony of W. W. Willey, Oliver Lanier and Charles Stewart. Willey testified that he had a talk with Hurst about seven or eight years, he supposed, after the purchase of the place, in regard to a remonstrance against

the opening of a road. He drove over to Hurst's place with the remonstrance, and Hurst looked at it and signed it and said, "I will take this in the house and have Stella sign it." He took it in and brought it back with her name on it. When he signed the paper he said, "I will take this in and let Stella sign it; she owns the farm down here; it is in my name but she owns it, and she would have a right to sign this paper." Lanier testified that he heard a conversation between Charles Burgesser and the appellant in regard to fencing the cemetery on the land in question when Burgesser asked permission to fence it, and Hurst told him he did not feel he could take care of it himself and thought it was right for Burgesser to fence it, but said, "The place belongs to her and we will see what she says about it." This conversation was testified to by Burgesser at the first hearing. The testimony of Stewart was unimportant because it related to a conversation with Mrs. Hurst in regard to the land, which was incompetent to be given in evidence.

The additional evidence is not of such a character as to deny the relief to which the appellees were entitled in accordance with the judgment upon the former appeal. The only additional evidence which is material is that of the two Hursts, father and son. The father's testimony has no tendency to change the facts as recited in the former opinion. There was no doubt that the appellant bought the land or that his wife gave him $9400 in money for that purpose. It is so found in the opinion. The opinion uses the word "furnish" while the witnesses use the word "gave." They both refer to the same transaction, which was not the manual delivery of cash, bank notes or other form of currency, but was providing the funds to be used in the purchase by means of a check. The expression that she "gave" him the money does not necessarily or reasonably, under the circumstances, imply a donation; a transfer of property. To "give" may refer to the transfer of either the possession or the title, and is so used indiscriminately. It

may mean, to pay; to hand over or deliver; and is said in the Standard Dictionary to be a term of such general import as to be a synonym for a wide variety of words; that "to give" is primarily to transfer to another's possession or ownership without compensation; in its secondary sense, in popular meaning, it is to put into another's possession by any means or on any terms whatever.

Frank Hurst's testimony throws very little light on the case. The conversation with the appellant and his wife to which he testifies occurred more than twelve years before his testimony was given. He was a schoolboy, who had no particular interest in the subject matter of this casual conversation, and nothing appears to have occurred in the meantime to impress it upon his memory. His testimony is of that character of which it is said in Greenleaf on Evidence, sec. 200: "The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake, the party himself either being misinformed or not having clearly expressed his own meaning or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say." This section is quoted and its doctrine approved and followed in *Bragg* v. *Geddes,* 93 Ill. 39, and *Orear* v. *Farmers State Bank and Trust Co.* 286 id. 254. The most that can be claimed from the conversation, in any event, is that Mrs. Hurst intentionally caused the deed to be made to her husband for reasons satisfactory to her. It has no tendency to prove an intention to make a gift to him. She thought that if anything happened to her he would be all right and if anything happened to him she would have her rights. The meaning of this expression is vague and indicates only that her own ideas were not clear, but she thought in any event the survivor would be all right. The fact that she intentionally caused the deed

to be made to him, if that is the fact, is of itself immaterial. A trust results from the fact that one person's money has been invested in land and the title taken in the name of another. It is immaterial whether the purchase was made by the one or the other, and it may have been made by either, and either with or without the knowledge of the other. If the fact exists that one person's money paid for the land and the title was taken in another a trust is raised in favor of the person whose money was used to purchase the land. (*Bruce* v. *Roney*, 18 Ill. 67; *Mathis* v. *Stufflebeam*, 94 id. 481; *Froemke* v. *Marks*, 259 id. 146.) Where a wife furnishes the entire purchase money for land and the title is taken in the name of the husband it is not necessary to show anything in addition to these two facts to establish a resulting trust. (*Wright* v. *Wright*, 242 Ill. 71.) To avoid the effect of these facts the holder of the legal title must establish some positive defense. As was stated in the opinion on the former appeal, where a husband takes title to land bought with his wife's money there is no presumption of a gift or advancement to him, as there is no legal obligation on the part of the wife to support him. In such case it is not necessary, in order to establish a resulting trust in favor of the wife, to show an intention by the parties to create a trust at the time of the transaction. Where there is a legal obligation resting on the person furnishing the consideration to support the person in whose name the conveyance is taken the law infers an intention to make a gift or advancement to the person named as grantee, and in order to establish a resulting trust in favor of the person furnishing the consideration there must be circumstances attending the transaction which negative the inference of a gift or advancement. It was held that there was no presumption arising on the evidence in the record in favor of Allen B. Hurst or against Minerva C. Crawford. There was in the record, in substance, the simple state of facts that Hurst bought the land and took title to himself

and paid therefor at least $9400 of his wife's money and afterward stated that the land belonged to his wife. The additional evidence has not changed this record.

The decree will be affirmed.    *Decree affirmed.*

---

(No. 15145.—Reversed and remanded.)
JOHN E. WINKELMAN, Appellee, *vs.* LAURA M. WINKELMAN *et al.* Appellants.

*Opinion filed February 21, 1923—Rehearing denied April 6, 1923.*